WATKINS, Judge.
This is an eviction rule brought by Pro-Action Partnership, a Louisiana partnership, the lessor, against Bonaparte’s Fried Chicken, Inc., lessee. The trial court found that Bonaparte’s was not in default of its rental payments or of its obligation to maintain insurance, and refused the eviction. Finding that Bonaparte’s violated its obligation to maintain insurance in accordance with the requirements set forth in the lease instrument, and was properly placed in default, we reverse on the main issue, eviction.
On April 24, 1979, Pro-Action and Bonaparte’s entered into a written lease of the premises in question, located at 1723 Staring or Starring (the record differs as to the spelling) Lane, Baton Rouge. The stated term of the lease is 20 years, beginning June 1,1979. Rent is to be paid monthly, in advance.
Lessee, Bonaparte’s, is obligated to carry fire and extended coverage insurance under the terms of paragraph 8 of the lease instrument, which reads as follows:
“8. Lessee agrees to carry, at its own expense, during the term of this lease, fire and extended coverage insurance on the improvements forming a part of the leased premises. Such insurance shall at all times provide that it may not be can-celled without ten (10) days prior written notice to Lessor. In the event of damage to or destruction of the said improvements by fire or other casualty, Lessor at its sole cost and expense, shall promptly restore such improvements as nearly as possible to their condition prior to such damage or destruction. All insurance proceeds received by Lessor or Lessee shall be applied to the payment for such restoration. Lessee shall designate Lessor and any mortgagee holding a secured interest in the leased premises as beneficiaries and shall furnish Lessor and such mortgagee with a copy of the current policy.”
The lease instrument set forth the procedure for putting in default in paragraph 12, which reads as follows:
“12. In the event Lessee defaults in the timely payment of any installment of rental or Lessee defaults in the performance or observance of any other covenant of its part herein contained and within thirty (30) days after receipt by Lessee of written notice of such default, Lessee has not cured the default or does not proceed and continue with due diligence to cure such default until the same is cured, then in either such event Lessor may, at his option, enforce this lease in any manner provided by law or terminate this lease. If this lease is so terminated by Lessor, this lease shall cease and come to an end as if that were the day originally fixed for the expiration of the term thereof.”
*148 It should be noted that thereby Bonaparte’s was obligated to name Pro-Action, lessor and mortgagee, as loss payee.
On November 15, 1979, Ranger Insurance Co. issued to Chicken Coop & Bonaparte’s Fried Chicken, Inc., a notice of cancellation of its special multi-peril policy on certain properties effective ten days from the receipt of notice unless the policy was surrendered to them sooner. Bonaparte’s operated a chain of fast-food restaurants, and the location in question was affected by this cancellation.
Tom Hudson & Associates, Inc., Baton Rouge, an insurance agency, thereafter at Bonaparte’s request obtained a binder from Fireman’s Fund Insurance Co. covering all risks to the buildings and fire on the contents on Bonaparte’s Louisiana operations. The binder took effect at 12:01 a. m. November 25, 1979, and expired at 12:01 December 4, 1979. An attachment listed the premises in question as one of the locations covered. There is no declaration or indication in the binder that Pro-Action is a loss payee.
A new binder was issued through Tom Hudson & Associates, Inc., effective 4:00 p. m. December 6,1979, and expiring January 6, 1980. A list of loss payees, mortgagees, and additional named insureds for several locations was set forth in an attachment, Schedule “C”. The location in question was not listed under the loss payees on this Schedule “C”.
On November 27, 1979, V.R. Maggio, partner in Pro-Action, addressed a letter to Chip Meehan, Vice-President of Bonaparte’s, by certified mail, return receipt requested, demanding that Bonaparte’s vacate the premises in question. The second paragraph of that letter read as follows:
“Bonaparte’s is in default in in (sic) our lease in the following areas: (1.) Payment is past due from September, 1979; official notice sent to you October, 1979. (2.) default of paragraph 8, of our lease; notice of cancellation attached.”
The trial court found that insurance was in effect on November 27, 1979, and that, thus, Bonaparte’s was not in default for failure to maintain insurance on the date the letter was written. We cannot agree.
The binder that took effect on December 6, 1979, named loss payees for several locations, but did not indicate that Pro-Action, or any other individual, firm, or partnership was loss payee of the premises in question. We must, therefore, assume that Pro-Action was not named loss payee under the earlier binder that took effect November 25, 1979, as there is nothing on the face of the binder or attachment to so indicate. The lease instrument clearly requires that Pro-Action be named as “beneficiary” of the fire and extended coverage insurance which Bonaparte’s agreed to carry at all times.
Bonaparte’s violated the terms of the lease agreement by not causing Pro-Action to be named loss payee. Bonaparte’s violation of the terms of the lease agreement extended at least through the time of the expiration of the second binder, January 6, 1980. Paragraph 12 of the lease instrument gave the lessee 30 days in which to correct a violation of the terms of the lease after it received written notice of default. The return receipt to Maggio’s November 27,1979 letter that placed Bonaparte’s in default was signed the next day, November 28, 1979. Thus, Bonaparte’s had until December 28,1979, to correct its default. It failed to do so. Therefore, under the terms of paragraph 12. of the lease instrument, the lease ceased to exist as of December 29, 1979, and plaintiff-lessor is entitled to eviction as sought.
We note that a certificate of insurance was issued by Tom Hudson & Associates, Inc., on January 18, 1980 (the date of the trial on the rule), naming Pro-Action as mortgagee of the building at location 1723 Staring Lane. However, at that time, more than 30 days had elapsed since the putting in default, and the lease had terminated under its own terms.
Plaintiffs also sought and had obtained, ex parte, a sequestration of Bonaparte’s movable goods on the leased premises. The trial court ruled only by implication on the *149 continuation of the sequestration. It properly found that Bonaparte’s was not given the required 30 days to pay rent after being placed in default. Therefore, the sequestration, founded upon late payment of rent, should be considered lifted, and we so interpret the effect of the trial court’s ruling.
The judgment of the trial court is reversed in refusing to order the eviction of Bonaparte’s Fried Chicken, Inc., from the premises at 1723 Staring Lane, Baton Rouge, Louisiana, and that corporation is hereby ordered evicted from those premises. The judgment of the trial court impliedly lifting the sequestration of Bonaparte’s movables on the premises formerly subject to lease is affirmed. All costs shall be paid by Bonaparte’s Fried Chicken, Inc.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.